Trevor J. Stefano
ACOMS # 506410
Goose Creek Correctional Center
P.O. Box 877790
Wasilla, Alaska 99687
(907) 864-8100

RECEIVED

OCT 0 9 2013

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

Trevor J. Stefano,

    Plaintiff,

    v.

Amy Rabeau, Superintendent;
Chris Olson; and
Jason Brown, P.O. III,

    Defendants.

Case No. 3:13-cv-_____-_____

AFFIDAVIT OF MICHELLE KNITTLE

    I, Michelle Knittle, declare under penalty of perjury:

1.  I am a witness in the above captioned matter, being over 18

    years of age, and fully competent to make this affidavit. I

    have personal knowledge of the facts stated in this affidavit,

    and to the best of my knowledge all information stated herein

    is true and correct.

2.  I started work at Goose Creek Correctional Center (GCCC) in

    July of 2012, and was employed as an education coordinator.

Affidavit of Michelle Knittle           Page 1 of 8
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___

Case 3:13-cv-00198-TMB  Document 1-1  Filed 10/09/13  Page 1 of 8

Exhibit A
Page 1 of 8

4

3. The Education Department had no computers for inmate use for their education endeavors when I started.

4. I had been promised that computers would be installed for inmate use "soon." However, "soon" streached into months.

5. The Education Department was finally given laptops with projectors for instructor use in classrooms. Since there were only two of us education coordinators at that time, we obtained permission to use the other laptops in the computer lab so that we could start teaching Microsoft Office skills.

6. P.O. Jason Brown (P.O. Brown) then took one of the computers. I believe he felt that he needed it more than the inmate-students did.

7. In March Dennis Denniston (IT Administrator) sent computers to the Education Department to use until the network in the room could be set up. the new computers were originally to be used in the Voc. Tech. Department. Since that department was not operational at the time, we were told to use the computers in the Education Department computer lab. However, the Voc. Tech. computers had passwords that we did not know, so Ms. Vague had the computers moved to the counter for storage. The laptops were returned to the computer lab for inmate-student use.

8. On April 10, 2013, I was walking down the sidewalk to the

Affidavit of Michelle Knittle
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___

Page 2 of 8

Exhibit A
Page 2 of 8

Case 3:13-cv-00198-TMB   Document 1-1   Filed 10/09/13   Page 2 of 8

Education Department when I witnessed Mr. Stefano being led away in handcuffs. I was told by the correctional staff that Mr. Stefano was being detained because of damage to computers in the computer. C/O Mosley further stated that he did not believe that Mr. Stefano had anything to do with the computer damage; however, the officers were required to take Mr. Stefano to the punitive segregation unit under the order of Lt. Brumsfiel.

9. As Mr. Stefano was the computer lab assistant at the time, I was further briefed on the events that led to his detention. I was informed that Mr. Stefano left the computer room, and that while he was away two other inmates damaged the stored (Voc. Tech.) computers: removing parts to be sold for tattoo guns.

10. Ms. Vague and I told the correctional staff investigators that Mr. Stefano left the classroom each day at that time for his LSSAT substance abuse class. During this time inmate Holton (the Education Department office assistant) filled in for Mr. Stefano. Inmate Holton could therefore access and damage the computers during this block of time without Mr. Stefano's knowledge or participation.

11. On or about April 18, 2013, Mr. Stefano was found not guilty of the alledged infraction. I learned this information by

Affidavit of Michelle Knittle
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___

Page 3 of 8

Exhibit A

Case 3:13-cv-00198-TMB   Document 1-1   Filed 10/09/13   Page 3 of 8

accessing the Department of Corrections database — ACOMS.

12. On or about April 20, 2013, Mr. Stefano was released from the punitive segregation unit. Mr. Stefano came back to the Education Department asking for his job back. I informed Mr. Stefano that due to the damaged computers the computer lab had been closed, which eliminated his job position. However, the Education Department's office assistant (I/M Holton) had been found guilty of the disciplinary infraction, he was fired. This left the office assistant job position open if Mr. Stefano wanted it. Mr. Stefano indicated that he did want the job. I verfied through the job services officer (C/O Richardson) that Mr. Stefano was eligible to work in the Education Department. Mr. Stefano was then hired as the office assistant.

13. Over the next several weeks (4 to 6 weeks), staff performed weekly inspections of the Education Department where Superintendent Amy Rabeau was accompanied by both assistant superintendents, as well as P.O. Brown and others. While inspecting the Education Department the upper-level staff observed Mr. Stefano working on one of the inmate computers (a computer that was not connected to the Departments network). On a couple of occasions one of the inspection staff briefly conversed with Mr. Stefano.

14. One of the rules for the Education Department workers is that

Affidavit of Michelle Knittle
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___

Exhibit A
Page 4 of 8

if their assigned work was finished, they were allowed to work on their homework.

15. Mr. Stefano was enrolled in a degree program through the University of Alaska Fairbanks where he has been receiving straight A's. This degree program was the second part of an apprenticeship program offered to Mr. Stefano by the Department of Corrections at Spring Creek Correctional Center, in Seward, Alaska.

16. Tim Flannery (a new education coordinator) was hired in June. He was in his office when Mr. Stefano jokingly tried to negotiate his way around the homework rule since I had quite a stack of work for him to complete. Mr. Stefano wanted to work on his schoolwork before finishing his assigned job duties. I knew that Mr. Stefano had until August to complete his class and that he was nearly finished, so his schoolwork was not a priority at that time. I good naturedly told him that he reminded me of my son who used to attempt to negotiate just like Mr. Stefano was, but that it didn't work for my son, and it was not going to work for Mr. Stefano.

17. Mr. Flannery wanted to take over my duties as GED proctor. After overhearing that conversation, Mr. Flannery went to P.O. Brown (my supervisor) and reported that I had an inappropriate mother/son relationship with Mr. stefano.

Exhibit A
Page 5 of 8

Affidavit of Michelle Knittle
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___

Case 3:13-cv-00198-TMB   Document 1-1   Filed 10/09/13   Page 5 of 8

18. I was then required to attend a meeting with Superintendent Amy Rabeau, Chris "Gary" Olson (my boss), and P.O. Brown (my supervisor). I was told that even though Mr. Stefano was found not guilty of damaging state property (the computers), Mr. Stefano was actually guilty. I was further informed that Mr. Stefano and his family were constantly causing problems for GCCC and the Department of Corrections (i.e., complaining, lodging grievances, and filing litigation). In fact, Ms. Rabeau named Mr. Stefano's mother Jackie by name, and identified his grandmother whose name Ms. Rabeau could not recall, but stated that they were constantly calling administration to complain.

19. At the conclusion of that meeting, I was ordered to return to the Education Department and fire Mr. Stefano without cause to warrant that termination. The firing of Mr. Stefano was purely based on the aligations made by P.O. Brown.

20. I did as I was ordered to do by upper-level correctional staff, and I fired Mr. Stefano from his job.

21. At that meeting I also asked Mr. Olson what I was supposed to do about Mr. Stefano's college class (a grant writing class) which required a computer. Mr. Olson, who does not work on site, told me to just "get him through it and then let someone else deal with him."

Exhibit A
Page 6 of 8

Affidavit of Michelle Knittle
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___

22. Mr. Stefano came to the Education Department the following week to complete some edits his professor from the University of Alaska Fairbanks had sent to me. I gave Mr. Stefano the information from his professor. Since I was told that Mr. Stefano could not be in the education office area anymore, I put him in a classroom with a laptop.

23. The classroom was actually two classrooms with a divider wall that was open. This allowed two security cameras and a correctional officer (who partolled the hall, and was able to observe the classroom through the many windows that looked in from the hallway) to monitor Mr. Stefano while he used the computer.

24. When Mr. Stefano completed the required revisions, he brought the computer back to me without damage.

25. Approximately an hour later P.O. Brown came to my office, and yelled at me for putting Mr. Stefano in a room alone with a laptop. I explained to P.O. Brown that Mr. Olson instructed me to get Mr. Stefano through his college class, and then let someone else deal with Mr. Stefano. P.O. Brown asked why I needed to put him on a computer after I had been told that he was guilty of damaging computers. I explained to P.O. Brown about the cameras and the correctional officer. At that point P.O. Brown mumbled that "Stefano is a criminal and gave up his

Affidavit of Michelle Knittle
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___

rights when he committed his crimes and should only be allowed a pencil and paper" to finish the class.

26. I was then fired for doing my job. My firing was done because I allowed Mr. Stefano to use a laptop computer to make the necessary corrections to his schoolwork for a computer required college class.

27. Based on information and belief, Mr. Stefano has been retaliated against by correctional staff in this and other situations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct with the exception as to information based on information and belief, and as to that I believe that the information is accurate.

Executed on: _August 3, 2013._

_Michelle Knittle_
Michelle Knittle

Affidavit of Michelle Knittle
Stefano v. Rabeau, et al.
Case No. 3:13-cv-_____-___