RECEIVED

OCT 09 2013

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

Trevor J. Stefano
ACOMS # 506410
Goose Creek Correctional Center
P.O. Box 877790
Wasilla, Alaska 99687-7790

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

TREVOR J. STEFANO, )
    Plaintiff, )
v. )
)
AMY RABEAU, Superintendent; )
CHRIS OLSON; and )
JASON BROWN, P.O. III, )
    Defendants. )
_____) Case No. 3:13-cv-_____-____

AFFIDAVIT OF TREVOR J. STEFANO

I, Trevor J. Stefano, declare under penalty of perjury:

1. I am the Plaintiff in the above captioned matter, being over 18 years of age, and fully competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit, and to the best of my knowledge all information is true and correct.

2. On July 26, 2012, Probation Officer Keith M. Friel classified me for out-of-state transfer. Mr. Friel found that the transfer would greatly impede my rehabilitation needs. However, Mr. Friel's recommendation not to transfer was overrode, and I was classified to transfer to Hudson, Colorado. I appealed the out-of-state transfer order, and was denied by the Director of Institutions, Bryan Brandenburg on September 13, 2012.

Aff. of T. J. Stefano
Stefano v. Rabeau, et al.    Exhibit B    Page 1 of 7
Page 1 of 7

3. On September 17, 2012, my family and I, with the assistance of private counsel, filed an Administrative Appeal in Anchorage Superior Court. The attorney moved for a stay of transfer, and on October 19, 2012, Superior Court Judge Mark Ridner found that an out-of-state transfer might impair my constitutional right to rehabilitation; however, an evidentiary hearing was needed to resolve the issue. The Superior Court ordered the Department of Corrections to keep me in the state pending the evidentiary hearing.

4. On or about November 11, 2012, I was transferred from Spring Creek Correctional Center to the new Goose Creek Correctional Center. Upon arrival at the new facility I immediately had problems obtaining my personal property, as well as staff improperly interferring with my family visits. As a result of these problems, I was required to file prisoner grievances to get any relief. I ultimately prevailed on about half of the grievance issues.

5. After transfer to the Goose Creek facility, my out-of-state transfer appeal was settled through stipulation by the parties. The Department had agreed not to transfer me to Colorado.

6. Around the begining of January, 2013, I was hired as a computer instructor for the education department at Goose Creek.

7. On or about January 28, 2013, I was accepted into LSSAT. This is a substance abuse class with moral recognition therapy and anger management. I attended classes Monday through Thursday at 8:30 am until 12:00 noon.

8. On April 10, 2013, I was attending a LSSAT class. During this period of time Inmate Holton filled in for me in the computer lab. At approximately 9:00 am that morning several staff members entered the LSSAT class, and detained me.

**Aff. of T. J. Stefano**
Stefano v. Rabeau, et al.

Exhibit B   Page 2 of 7
Page 2 of 7

Case 3:13-cv-00198-TMB   Document 1-2   Filed 10/09/13   Page 2 of 7

I was taken to the punitive segregation unit by Correctional Officer Mosley. At this time I was not told why I had been taken to the segregation uniit.

9. On or about April 13, 2013, I was given a disciplinary report. It was at this time that I learned that I had been taken to the segregation unit because security staff and the education correctional officer (rover) had found that several of the unused, stored, computers had been damaged by taking motors to use as tattoo paraphernalia.

10. On or about April 18, 2013, I was provided a disciplinary hearing. This hearing was provided to me eight days after I was placed in punitive segregation. The hearing was held by three staff members, including Lt. Brumsfiel. Lt. Brumsfiel also had authored the disciplinary report that was the subject of my disciplinary hearing. At the conclusion of the hearing the panel found me not guilty.

11. On or about April 20, 2013, I was released from punitive segregation. This release came two(2) days after I was found to be not guilty of the alleged infraction.

12. Later that same day I went to the education department to seek out my old job. I was told by Ms. Knittle, the education coordinator, that the computer lab had been closed due to the damaged computers; however, Ms. Knittle told me that Inmate Holton had been found guilty, and that his job of office assistant had come open. I told Ms. Knittle that I would like to take that job until the computer lab was reopened. Ms. Knittle verified that I was cleared to work, and hired me for the job.

13. Over the next several weeks Superintendent Rabeau, as well as Ast. Superintendent Kohut (Kohut), Lt. Brumsfiel, and P.O. Brown, performed their weekly inspection of the facility. During this period of time they inspected the education department and observed me using hte inmate worker desktop computer. On a couple of the inspections Kohut and

**Aff. T. J. Stefano**
Stefano v. Rabeau, et al.

Exhibit B
Page 3 of 7

Page 3 of 7

Case 3:13-cv-00198-TMB   Document 1-2   Filed 10/09/13   Page 3 of 7

Lt. Brumsfiel said hello.
14. On or about May 10, 2013, I was sitting at the inmate worker desktop computer where I worked in the education office, when Kohut and Lt. Brumsfiel came in. Kohut leaned over the desk, breathing heavily as if angered, while Lt. brumsfiel sat in a chair right next to me. Kohut asked "What are you doing in here?" I told him I worked in the office as the office assistant. Kohut then tells me that he does not like me anywhere near a computer after the damage that was found to the computers in the computer lab. I expalined to Kohut that I was found not guilty of damaging the computers, and was also cleared for hire into this position by Correctional Officer Richardson. Kohut, in a threating tone, told me that he didn't like it, and to "just remember 'Big Brother' is watching," while pointing at the security camera that observed the room I worked in. I told Kohut that its not the cameras that keep me honest. Both Kohut and Lt. Brumsfiel left the office.
15. On or about May 17, 2013, I was fired from my job in the education department. Ms. Knittle told me that she could not explain why I was being fired, but only that she was told by her supervisor that she had to fire me from my job.
16. On or about May 24, 2013, I was summoned to the education department to fix some of my schoolwork that had been sent back by my instructor at the University of Alaska Fairbanks. Ms. Knittle told me that I could no longer be in the education office, and so I was placed in a classroom with a laptop computer. After completing my revisions, I returned the laptop to Ms. Knittle without any damage.
17. After making those revisions, I learned that Ms. Knittle had been fired.
18. Sometime in June of 2013, Ms. Knittle contacted my criminal attorney. She told my attorney that she had been fired

Aff. of T. J. Stefano
Stefano v. Rabeau, et al.

Exhibit B
Pg. 4 of 7

Page 4 of 7

Case 3:13-cv-00198-TMB   Document 1-2   Filed 10/09/13   Page 4 of 7

for providing me with access to a laptop computer so that
I could complete the necessary revisions to my college
work. She told my attorney that the day I was fired she
had been called to a meeting with the Superintendent
(Amy Rabeau) as well as Chris Olson and Jason Brown.
Ms. Knittle explained that she had been told by those staff
members that while I was found not guilty in the disciplinary
hearing, I was actually guilty of the infraction. She went
on to explain to my attorney that the trio also informed
her that my family and I were constantly causing problems
for Goose Creek and the Department of Corrections, such
as, complaining, lodging grievances, and filing litigation.
Ms. Knittle stated that both my mother and grandmother
were identified by Rabeau as members of my family that
constantly caused trouble in this manner. My attorney
directed Ms. Knittle to contact my mother so that
Ms. Knittle could provide me with an affidavit attesting
to those facts.

19. On or about August 3, 2012, Ms. Knittle met with my mother
and provided her with an affidavit that stated that the
staff at Goose Creek, as well as the office of the
commissioner, were unhappy with my filing of prisoner
grievances and the filing of the Administrative Appeal
in state court addressing my transfer to Colorado.

20. I have been in fear of filing anymore prisoner grievances
because of staff retaliation. On September 6, 2013, I
filed a 42 U.S.C. § 1983 retaliation complaint. I was
researching possible defenses that could be raised and
found that what had been good law at one point was no
longer good law: that is, now even claims of retaliation
were required to be exhausted before being litigated in
court. I then moved to voluntarily dismiss that case.
See Case No. 3:13-cv-00175-SLG, Stefano v. Rabeau, et al.

I then completed the necessary exhaustion of prisoner grievances. This has started another round of retaliation.

21. I obtained permission to start a paralegal I course through Adams State Univ. After receiving my books, the mailroom informed me that they would be seizing the college books. I was then required to submit another prisoner grievance which addressed this issue. After repeated attempts to resolve the issue, I was granted partial relief. Rabeau informed me that I would be able to access the "hard bound book" by going to the education department and checking it out for review, and then returning the book when finished. This relief was granted on September 26, 2013.

22. On September 30, 2013, at approximately 1:45 pm Sgt. Lovelace entered my cell looking for a hardback book that had been previously provided to me for retention in my cell. Stg. Lovelace informed me that Rabeau had directed him to seize the book and place it in education. I told Sgt. Lovelace that I had authorization to keep the book in my cell from Kohut and the Security dept. Sgt. Lovelace asked to see the "cop-out" which authorized the book's retention "in cell." Sgt. Lovelace then took my hardback book that had been approved for "in cell" retention.

23. On October 1, 2013, at about 12:50 I went to the education department and asked the education coordinator if I could check out my hardback paralegal book for my college class. He told me he did not have the book.

24. On October 2, 2013, at 12:50 I went to the education department in an attempt to check out my hardback paralegal book required to complete my class. Mr. Hopkins told me that P.O. Garner told him he is not allowed to give me my book until an established study area is designated. I asked when this would be, and he said he did not know.

Aff. of T. J. Stefano
Stefano v. Rabeau, et al.

Exhibit B
Page 6 of 7

Page 6 of 7

Case 3:13-cv-00198-TMB   Document 1-2   Filed 10/09/13   Page 6 of 7

Pursuant ot 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10/6/13

                                                           *(signature)*
Trevor J. Stefano
ACOMS # 506410
Goose Creek Correctional Center
P.O. Box 877790
Wasilla, Alaska

Aff. of T. J. Stefano
Stefano v. Rabeau, et al.

Exhibit B
Page 7 of 7

Page 7 of 7

Case 3:13-cv-00198-TMB   Document 1-2   Filed 10/09/13   Page 7 of 7