Trevor J. Stefano
ACOMS # 506410
Goose Creek Correctional Center
P.O. Box 877790
Wasilla, Alaska 99687-7790
PH # (907) 864-8100

RECEIVED
MAR 1 2 2014
CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TREVOR J. STEFANO,<br>　　Plaintiff,<br>　　v.<br>AMY RABEAU, et al.,<br>　　Defendants. | Case No. 3:13-cv-00198-TMB |

AFFIDAVIT OF TREVOR J. STEFANO
(In Support of Motion for Reconsideration ...)

I, Trevor J. Stefano, declare under penalty of perjury:

1. I am the Plaintiff in the above captioned matter, being over 18 years of age and fully competent to make this affidavit. I have personal knowledge of the information stated herein, and all facts are true and correct.

2. I applied for acceptance to the Palmer Correctional Center ("PCC") Theraputic Living Community ("TLC") which is a Christian faith-based rehabilitative program. I did this so that I could learn more about the Bible, and to reinforce the substance abuse and moral recognition therapy I took through LSSAT at Goose Creek Correctional Center ("GCCC"). Since I never want to return to this environment, and with the known success rate of the TLC program, I felt that this was the best move I could make.

Affidavit of Trevor J. Stefano　　　　　　　　　　　　　　Page 1 of 4
Stefano v. Rabeau, et al.
Case No. 3:13-cv-00198-TMB

3. The application process for acceptance into the TLC program at PCC consisted of a telephonic interview with Chaplin Dean. During the interview I was asked many questions to include "Do you now or have you ever been a part of a cult such as Wiccan, Satanism, Jehovas Witness, Tarot, etc. ...?" I informed Chaplin Dean that I have not been involved with any of these types of groups. Chaplain Dean then told me what I could expect of the program once I arrived.
4. Chaplain Barney Swaney was present for the telephonic interview.
5. A couple of days later, on February 7, 2014, I reviewed my institutional file with Probation Officer Garner when I noticed that there was an **Administrative Transfer Order** approving me for transfer to PCC so that I could attend the TLC program.
6. On February 11, 2014, I was approached by Chaplain Swaney who told me that while I was approved for transfer to the TLC program, that transfer would have to wait until I had fully resolved this case. I asked Chaplain Swaney who had made the decision, but he could only tell me the decision came from the "higher ups." I explained to Chaplain Swaney that I would resolve this case as soon as possible because I really wanted to attend the TLC program.
7. Chaplain Swaney's statement prompted me to file the request for Alternative Dispute Resolution with this Court. I had intended to settle this case for the agreement that I would be transferred to the TLC program — a transfer I had alredy been approved for.
8. I had applied with this Court for ADR because I had the feeling that this might have been a ploy by the Defendants to get me to drop the case under Fed. R. Civ. P. 41(a)(1)(A)(ii). As this would be the second voluntary dismissal, it would be on the merits, and would operate to prevent me from re-filing the action if they failed to uphold their promise.

**Affidavit of Trevor J. Stefano**  Page 2 of 4
Stefano v. Rabeau, et al.
Case No. 3:13-cv-00198-TMB

9. In addition to filing for ADR with this Court, I decided to see if I could get that promise in writing through Chaplain Swaney. I sent Chaplain Swaney a "Request for Intervie" (RFI)(a form used to communicate with staff at GCCC). In the RFI I asked if I could still go to the TLC program if I dropped this lawsuit. Chaplain Swaney came and saw me in the housing where I reside at GCCC, and told me that the head Chaplain (Duncan) now wanted me to reside in the Multi-Faith Module at GCCC before going to the TLC program.
10. I asked Chaplain Swaney why and when this had been added as a prerequisite to attending the TLC program? Chaplain Swaney was only able to tell me that Chaplain Duncan **now** wanted me to attend the Multi-Faith Module before attending the TLC program.
11. I asked Chaplain Swaney how long I would have to remain in the Multi-Faith Module before I could start the TLC program? Chaplain Swaney said he was unsure, but he believed that it could be as long as a year.
12. I asked Chaplain Swaney why I would be required to attend a module where Wiccan, Satanism, Buddhism, and other cults reside and practice their beliefs in a group setting, as it had seemed that Chaplain Duncan had been very concerned with whether or not I had been involved with such cults during the interviewing process. Chaplain Swaney could not offer me an answer to this question.
13. Later that evening I wrote a letter to both Chaplain Swaney and Chaplain Duncan. I explained that while I really did want to attend the TLC program, I did not want to be housed in a module where cults such as Wiccan and Satanism are practiced in a group setting. I explained that I thought it to be odd that I would be required to live around such cults as a prerequisite, when, in fact, other prisoners are not required to live in this type of setting before being allowed into

**Affidavit of Trevor J. Stefano**  Page 3 of 4
Stefano v. Rabeau, et al.
Case No. 3:13-cv-00198-TMB

the TLC program.
14. After filing for ADR, counsel for defendants Matthias Cicotte, opposed my request. Mr. Cicotte did not serve me with a copy of his opposition as required by Fed. R. Civ. P. 5(d)(1), and thus I was not able to respond to his opposition.
15. I learned of the filing through I/M Billy Jack Wiglesworth who's mother has a PACER account, and was able to look up my case. I also learned that Mr. Cicotte had previously filed a document to vacate this Court's order regarding the party planning meeting. I also have not been served with a copy of that document.
16. Had I been able to reply to the opposition filed by Mr. Cicotte this Court would have been informed that the statement made by Mr. Cicotte that "Stefano has already been informed directly by [a] Department of Corrections official that the DOC is not interested in settlement at this time", is a material misstatement of fact, as it is obvious that Stefano was told by Department officials that he would receive the relief he sought if he fully resolved this lawsuit.
17. It would appear that Mr. Cicotte has violated Alaska R. Prof. Conduct 3.3(a)(1) & (3) as Mr. Cicotte has made a false statement to this Court that has gone uncorrected by Mr. Cicotte.
18. Additionally, I had offered to Mr. Cicotte previously to settle for each side to bear their own costs, an offer that still stands.

Pursuant to 28 U.S.C. § 1746, I, Trevor J. Stefano, declare under penalty of perjury that the foregoing is true and correct.

Executed On: **March 9, 2014, at WASILLA, ALASKA.**

_____
Trevor J. Stefano
ACOMS # 506410

**Affidavit of Trevor J. Stefano**
Stefano v. Rabeau, et al.
Case No. 3:13-cv-00198-TMB

Page 4 of 4